# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## ROCK ISLAND DIVISION

| | |
|---|---|
| ESG WATTS INC, JAMES WATTS, and ARLO KREBS,<br><br>Plaintiffs,<br><br>v.<br><br>GOD'S KINGDOM, LTD, BRIAN NASTRUZ, JERRY FOSTER, SHEPPARD AUTO SALES AND PARTS INC., and MIDWEST DEMOLITION AND SCRAP INC.<br><br>Defendants. | CASE NO. _____<br><br><br>**COMPLAINT AT LAW** |

Watts Trucking, by and through its undersigned attorney, and for its complaint against the Defendants God's Kingdom, Ltd, Brian Nastruz, Jerry Foster, Sheppard's Auto Sales and Parts Inc., and Midwest Demolition and Scrap Inc., states as follows:

## **PARTIES**

1. ESG Watts, Inc. is an Iowa Corporation, with its main office in Rock Island, Illinois.

2. James Watts is an adult resident of Iowa.

3. Arlo Krebs is an adult resident of Iowa.

4. God's Kingdom, Ltd is an Illinois not for profit corporation with its main office in Illinois.

5. Brian Nastruz is an adult resident of Illinois.

6. Jerry Foster is an adult resident of Illinois.

#3374354

7. Sheppard Auto Sales and Parts Inc. is an Illinois Corporation with its main office in Illinois.

8. Midwest Demolition and Scrap, Inc. is an Illinois Corporation with its main office in Illinois.

## GENERAL ALLEGATIONS

9. On or about October 27, 2021, God's Kingdom, Ltd ("Kingdom") purchased a former landfill located at 8040 77th Street W, Taylor Ridge, Illinois at a tax sale.

10. Prior to the tax sale, the property had been owned by ESG Watts.

11. During ESG Watts's ownership of the property, ESG Watts, James Watts and Arlo Krebs owned certain pieces of heavy equipment that were located on the premises they had left to assist a follow-on occupant, Midwest Methane, in maintaining the surface area of the landfill.

12. When Midwest Methane suffered financial difficulties, the taxes on the property did not get paid so the premises was sold by the county for back taxes.

13. The equipment belonging to ESG Watts, James Watts, and Arlo Krebs remained on the property at the time it was sold by Rock Island County.

14. At a meeting on the premises on February 5, 2022, Brian Nastruz told Mr. Watts that he (i.e. Mr. Nastruz) was a representative of Kingdom.

15. Mr. Nastruz informed Mr. Watts in front of Mr. Krebs that Kingdom wanted all the equipment off the property, including two or three pieces of equipment that were located inside a building on the property.

16. Mr. Watts explained that due to the weight of the equipment, in order to move it over county roads to an adjacent piece of property, it would be necessary to wait for good

weather (i.e. after the roads thawed and had then dried following the usual Spring rains) in the Spring of 2022.

17. At this February 5, 2020, meeting, Mr. Nastruz agreed that as long as Mr. Watts removed the two or three pieces of machinery from the inside of the building and agreed to provide several roll off dumpsters as soon as Kingdom was ready to empty items from the building, Mr. Watts could wait until the roads were usable in the Spring to remove the equipment from the property.

18. Mr. Watts removed the pieces of heavy equipment from the building on February 13, 2022, and stood ready to provide the roll off dumpsters as was agreed to, but the Defendants never called for the roll off dumpsters.

19. As soon as the county roads began to dry in May 2022, the Plaintiffs moved some equipment off the property, but then, Mr. Nastruz informed both Mr. Watts and Mr. Krebs they would no longer be allowed to enter the property.

20. On May 14, 2022, Mr. Watts met with Jerry Foster and his wife at a restaurant in Milan, Illinois and Mr. Foster stated he was a representative of Kingdom.

21. At this May 14 meeting, Mr. Foster assured Mr. Watts that they would be able to work together, but Mr. Watts stated he was concerned because Mr. Nastruz had told him to stay off the property.

22. At this May 14 meeting, Mr. Watts also stated that when he went to the property to move more equipment, he saw that there was a sign on the gate to the property indicating that equipment on the premises was to be auctioned.

23. At this May 14 meeting, Mr. Foster told Mr. Watts not to worry about the auction, because due to the age and condition of the equipment, it had raised little interest.

24. At this May 14 meeting, Mr. Foster also stated that he was going to set up a meeting with the two of them and Mr. Nastruz to keep everything "peaceful."

25. On certain dates beginning on or after May 14, 2022, Mr. Foster went to the property with a crew of people and loaded equipment belonging to the Defendants onto lowboy trailers that were owned and/or attached to vehicles owned by Sheppard's Auto Sales and Parts Inc. and Midwest Demolition and Scrap, Inc.

## COUNT I: CONVERSION

26. The Plaintiffs hereby incorporate by reference the allegations above in Paragraphs 1-25.

27. Upon information and belief, the Defendants received money or other items of value in exchange for the equipment they removed from the premises.

28. At the time the Defendants removed the items of equipment from the premises, they knew or should have known this equipment was not owned by any Defendant, and/or was owned by one or more of the Plaintiffs.

29. The Defendants converted the equipment by removing said equipment from the premises and depriving the Plaintiffs of their ownership rights in the equipment.

30. By removing and disposing of equipment owned by one or more Plaintiffs for the enrichment of the Defendants, the Plaintiffs were damaged.

WHEREFORE, the Plaintiffs request this Court find in their favor and award them damages in the amount of the value of the equipment converted along with all other amounts permitted by law, including all fees and costs.

## COUNT II: DAMAGE TO PERSONAL PROPERTY

31. The Plaintiffs hereby incorporate by reference the allegations above in Paragraphs 1-30.

32. During May 2022, in attempting to and in furtherance of their acts of conversion against the Plaintiffs, the Defendants caused damage to the equipment owned by one or more Plaintiffs on and off the subject premises.

33. At the time the Defendants damaged the equipment, they knew or should have known they did not own or have any right to remove and/or damage the equipment.

34. The Plaintiffs were damaged by the actions of the Defendant in doing so.

WHEREFORE, the Plaintiffs request this Court find in their favor and award them damages in the amount of the value of the equipment damaged, along with all other amounts permitted by law, including all fees and costs.

### COUNT III: FRAUDULENT MISREPRESENTATION AGAINST KINGDOM, NASTRUZ, AND FOSTER

35. The Plaintiffs hereby incorporate by reference the allegations above in Paragraphs 1-34.

36. From February through May of 2022, Kingdom's representatives, Messrs. Nastruz, and Foster, made certain statements of fact to the Plaintiffs, including, but not limited to:

   a) On or about February 5, Mr. Nastruz agreed that Mr. Watts would not need to remove the equipment from the premises so long as he removed two or three pieces of equipment from the building and agreed to provide roll off dumpsters when requested;

5

    b)  On or about May 14, Mr. Foster informed Mr. Watts that they could work together, and Mr. Watts should not be concerned about the Defendants or their agents removing pieces of equipment from the premises without Mr. Watts' permission; and

    c)  On or about May 14, Mr. Foster informed Mr. Watts that Mr. Watts should not be concerned about a sign on the gate to the premises indicating that the plaintiffs' equipment was going to be auctioned online.

  37.  That at the time the statements, including those mentioned in paragraph 36, were made, the Defendants knew these statements were false.

  38.  That the Defendants made the statements with the intent to make the Plaintiffs believe they could reasonably leave their equipment in place until the roads were passable.

  39.  The Plaintiffs believed the statements and were justified in their reliance on the truth of the statements.

  40.  The Plaintiffs were damaged by relying on the statements made by the Defendants.

  WHEREFORE, Plaintiffs request this Court enter judgment in their favor on this Count , awarding them damages in the amount of the value of the property removed, punitive damages, and other amounts as appropriate and permitted by law, including all fees and costs.

### COUNT IV: CIVIL CONSPIRACY TO ROB THE PLAINTIFFS IN VIOLATION OF 720 ILCS 5/18-1(a)

  41.  The Plaintiffs hereby incorporate by reference the allegations above in Paragraphs 1-40.

42. The Defendants conspired to deprive the Plaintiffs of possession of their equipment by force, including the use of local law enforcement personnel, to take the Plaintiffs' equipment while in the Plaintiffs' presence, all contrary to the rights of the Plaintiffs.

WHEREFORE, the Plaintiffs request this Court find in their favor and award the damages in the amount of the value of the equipment robbed from them, along with all other amounts permitted by law, including all fees and costs.

## COUNT V: CONSPIRACY AND OTHER ACTIONS IN VIOLATION OF 18 U.S.C. § 1962(c)

43. The Plaintiffs hereby incorporate by reference the allegations above in Paragraphs 1-42.

44. The Defendants participated in the operation and/or management of an enterprise, which through a pattern of racketeering activity, they fraudulently deprived property owners such as the Plaintiffs from the control and use of their property, all as alleged above with more specificity.

45. Despite whatever religious or charitable purposes Kingdom may serve, the Defendants, along with others who may be identified during the discovery process, created, participated in, and controlled an enterprise designed to deprive property owners such as the Plaintiffs from control and benefit and ownership of their property.

46. The Defendants engaged in a pattern of racketeering activity designed to prevent the Plaintiffs from exercising authority over their own equipment and converting it to themselves.

47. The racketeering activity involved here related to the actions of the enterprise in knowingly taking the Plaintiffs' equipment in their presence by force or threatening the imminent use of force, which constitutes a robbery pursuant to 720 ILCS 5/18-1(a).

48. Upon information and belief, the Defendants transported the equipment to Missouri, where it was exchanged for money or other items of value, so the robbery was one which affected interstate commerce.

49. The Plaintiffs were damaged by the Defendants' actions.

WHEREFORE, the Plaintiffs request this Court enter judgment in their favor, and award them trouble damages pursuant to statute, and along with all other amounts permitted by law, including all fees and costs.

*/s/ Robert B. McMonagle*
Robert B. McMonagle, AT0005169
DENTONS DAVIS BROWN PC
The Davis Brown Tower
215 10th Street, Suite 1300
Des Moines, Iowa 50309-3993
Telephone: 515-288-2500
Facsimile: 515-243-0654
Email: robert.mcmonagle@dentons.com

ATTORNEY FOR PLAINTIFF

**PROOF OF SERVICE**
The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on July 14, 2022, by:

|   |   |
|---|---|
| U.S. Mail | FAX |
| Hand Delivered | Overnight Courier |
| Email | X  EDMS |

Signature:  /s/ Robert McMonagle