UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

JAMES WATTS and ARLO KREBS,

Plaintiffs,

v.

GOD'S KINGDOM, LTD; BRIAN NASTRUZ; JERRY FOSTER; SHEPPARD AUTO SALES AND PARTS, INC.; and MIDWEST DEMOLITION AND SCRAP INC.,

Defendants.

Case No. 4:22-cv-04110-SLD-JEH

ORDER

Before the Court is Defendant Midwest Demolition and Scrap Inc.'s ("Midwest") amended motion to dismiss, ECF No. 6. For the following reasons, the motion is GRANTED IN PART.

**BACKGROUND**[1]

Defendant God's Kingdom, Ltd ("GK") is an Illinois not-for-profit corporation. On or about October 27, 2021, GK purchased a former landfill in Taylor Ridge, Illinois that had previously been owned by non-party Iowa corporation ESG Watts.[2]

Plaintiffs James Watts and Arlo Krebs owned pieces of heavy equipment that had been left at the property. That equipment remained when GK purchased the site. On February 5, 2022, Defendant Brian Nastruz told Watts that he was a representative of GK. In Krebs's

[1] At the motion to dismiss stage, the court "accept[s] as true all well-pleaded facts in the complaint, and draw[s] all reasonable inferences in [the plaintiff's] favor." *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). Thus, unless indicated otherwise, this factual background comes from the Amended Complaint, ECF No. 3.

[2] ESG Watts was a party to the initial complaint. *See* Compl. 1, ECF No. 1.

presence, Nastruz told Watts that GK wanted all the equipment taken offsite, including several pieces of equipment located inside a building on the property. Watts explained that in order to move the equipment, it would be necessary to wait until "after the roads thawed and dried following the usual [s]pring rains." Am. Compl. ¶ 19, ECF No. 3. Nastruz agreed that as long as Watts removed the equipment from the building and provided several roll-off dumpsters for GK's use, Watts could wait until spring to move the rest of the equipment.

About a week later, Watts removed the equipment from the building and stood ready to furnish the dumpsters. "As soon as the county roads began to dry in May 2022," Watts and Krebs moved some equipment offsite, but Nastruz informed them that they would no longer be allowed to enter the property. *Id.* ¶ 22.

On May 14, 2022, Watts met with Defendant Jerry Foster and his wife at a restaurant in Milan, Illinois. Foster said that he was a representative of GK and assured Watts "that they would be able to work together," *id.* ¶ 24, but Watts expressed concern based on Nastruz's directive and "a sign on the gate to the property indicating that equipment on the premises was to be auctioned," *id.* ¶ 25. Foster told Watts not to worry and said he would plan a follow-up meeting to keep things "peaceful." *Id.* ¶ 27. However, on or after May 14, 2022, Foster went to the property with a group of people and loaded "equipment belonging to the Defendants"[3] onto vehicles owned by Defendants Sheppard Auto Sales and Parts, Inc. ("Sheppard") and Midwest. *Id.* ¶ 28. Plaintiffs believe the equipment was taken to Missouri and sold or traded.

In the Amended Complaint, Plaintiffs plead five counts. *Id.* ¶¶ 29–52. In Count I, conversion, Plaintiffs allege that Defendants "converted the equipment by removing said equipment from the premises" and "receiv[ing] money or other items of value in exchange for

[3] Presumably this is a drafting error as the crux of Plaintiffs' allegations is that Defendants did not own the property they took and it in fact belonged to Plaintiffs. *See, e.g.*, Am. Compl. ¶¶ 31, 32, 35, 41, 45.

the equipment they removed." *Id.* ¶¶ 29–33.  In Count II, damage to personal property, Plaintiffs allege that Defendants damaged some of the equipment. *Id.* ¶¶ 34–37.  In Count III, Plaintiffs allege that GK, Nastruz, and Foster engaged in fraudulent misrepresentation with respect to certain statements made at the February 5, 2022 and May 14, 2022 meetings. *Id.* ¶¶ 38–43.  In Count IV, Plaintiffs allege that Defendants committed robbery in violation of 720 ILCS 5/18-1(a), the section of the Illinois Criminal Code criminalizing robbery. *Id.* ¶¶ 44–45.  And in Count V, Plaintiffs allege that Defendants violated 18 U.S.C. § 1962(c)—a section of the Racketeer Influenced and Corrupt Organizations Act ("RICO")—because they engaged in a pattern of racketeering activity to "fraudulently deprive property owners . . . [of] control and use of their property." *Id.* ¶¶ 46–52.  The instant motion followed. *See* Am. Mot. Dismiss 1.

## DISCUSSION

### I. Legal Standard

A complaint must contain a "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A party may move to dismiss a complaint if it fails to state a claim upon which relief can be granted. *Id*. 12(b)(6).  To analyze the sufficiency of a complaint, the court "must construe it in the light most favorable to the plaintiff, accept well-pleaded facts as true, and draw all inferences in the plaintiff's favor." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014).  A court must "determine whether [the complaint's well-pleaded factual allegations] plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  These allegations must "raise a right to relief above the speculative level." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quotation marks omitted); *see also Carlson*, 758 F.3d at 826–27 ("A claim must be plausible rather than merely conceivable or speculative, meaning that the plaintiff must include enough details about

the subject-matter of the case to present a story that holds together." (citations and quotation marks omitted)).

**II. Analysis**

As Midwest notes, many of Plaintiffs' allegations refer to Defendants generally rather than any particular party. *See* Mem. Supp. Am. Mot. Dismiss 2–4, ECF No. 6-1. Midwest argues this practice violates Federal Rules of Civil Procedure 8(a)(2) and 10(b), noting that the Seventh Circuit "has previously rejected complaints that have lumped together multiple defendants." *Id.* at 4 (citing *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994)). However, the *Vicom* court analyzed an entirely different rule. *See Vicom*, 20 F.3d at 776–78 ("We certainly can see why the district court concluded that, at least with respect to some allegations, [the defendant] had not met *Rule 9(b) standards*." (emphasis added)); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Regardless, "no 'group pleading' doctrine . . . forbids allegations against defendants collectively." *Kuklinski v. Binance Cap. Mgmt. Co.*, Case No. 21-cv-001425-SPM, 2023 WL 2788654, at *10 (S.D. Ill. Apr. 4, 2023) (quotation marks omitted); *Joseph v. TGI Friday's, Inc.*, Case No. 21-cv-1340, 2022 WL 17251277, at *4 (N.D. Ill. Nov. 28, 2022) ("[T]here is no per se rule against group pleading." (quotation marks omitted)); *cf. Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009) (finding that an allegation directed at "the Defendants" adequately alleged personal involvement "because [the plaintiff] specifie[d] that he [wa]s directing th[e] allegation at all of the defendants").

Accordingly, the Court does not agree that "[i]t is impossible for Midwest to answer the Amended Complaint" because it "cannot determine what Plaintiffs are alleging that it did." Mem. Supp. Am. Mot. Dismiss 5. Here, only Count III is directed at a subset of Defendants.

Am. Compl. ¶¶ 29–52. Count I, Count II, Count IV, and Count V are brought against the whole group. *Id.* So "the Defendants," as it is used in those counts, sufficiently implicates the lot. *Cf. Brooks*, 578 F.3d at 582.[4] This is perhaps inelegant pleading. *See Thompson v. Cook Cnty.*, No. 22 C 1938, 2023 WL 2838449, at *3 (N.D. Ill. Apr. 7, 2023) (concluding that, although group pleading is "not an ideal practice," the plaintiff's complaint was sufficiently "coherent, and the basis of his claims [wa]s easily understood" (quotation marks omitted)); *Medina ex rel. N.M. v. Izquierdo*, 594 F. Supp. 3d 1045, 1059 n.9 (N.D. Ill. 2022) (concluding that, although the plaintiff's "unfortunate group[]pleading ma[d]e[] it difficult to ascertain" how individual defendants were allegedly at fault, the complaint "me[t] (albeit barely) the requirements of notice pleading"). But it does not necessitate dismissal, particularly where Plaintiffs' response cures any latent ambiguity as to the allegations' targets. *See* Resp. 2, ECF No. 7 ("[I]n Counts I, II, IV, and V, where the Amended Complaint alleges 'the Defendants' participated in some action, the Plaintiffs allege that all the Defendants participated in those actions.").

Of course, that Defendants are aware of which allegations pertain to them does not preclude other potential deficiencies in those allegations. *Cf. Brooks*, 578 F.3d at 582 (concluding that, although the plaintiff had adequately alleged the defendants' personal

[4] Midwest's heavy reliance on *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001), Mem. Supp. Am. Mot. Dismiss 5, is unpersuasive. In that case, the plaintiff's lengthy complaint contained "innumerable pages of rambling irrelevancies." *Magluta*, 256 F.3d at 1284. Because each count "[wa]s replete with factual allegations that could not possibly be material to that specific count," the Eleventh Circuit found the complaint "completely disregard[ed] [Federal Rule of Civil Procedure] 10(b)'s requirement that discrete claims should be plead [sic] in separate counts." *Id.* By contrast, Plaintiffs' plainly written Amended Complaint tells a straightforward story. The Court sees no Rule 10(b) issue, let alone one warranting dismissal. *See Fed. Deposit Ins. Corp. v. Hillgamyer*, Case No. 11-cv-7502, 2013 WL 6234626, at *3 (N.D. Ill. Dec. 2, 2013) ("It is well within the courts discretion to dismiss a complaint for violating Rule 10(b), however, noncompliance is rarely a basis for dismissing a complaint unless the complaint is not understandable and does not provide defendants with fair notice of the claims asserted against a defendant."); *see also Mishra v. Tandon*, No. 12 C 50390, 2013 WL 887681, at *1 (N.D. Ill. Mar. 8, 2013) ("The lodestar of Rule 10 is intelligibility, good organization, and basic coherence." (quotation marks omitted)). Moreover, although the *Magluta* court also took issue with the plaintiff's group pleading, "geographic and temporal realities ma[d]e plain that all of the defendants could not have participated in every act complained of." *Magluta*, 256 F.3d at 1284. Such an issue is not present here. *See generally* Am. Compl.

involvement, his allegation was still "a formulaic recitation of the cause of action and nothing more"). Midwest suggests that such deficiencies exist here. *See* Mem. Supp. Am. Mot. Dismiss 2–4. The Court addresses Midwest's arguments as to each count in turn.

With respect to Count I, conversion, Midwest argues that "[i]t is unclear which Defendant Plaintiffs are claiming received money for the equipment and Plaintiffs do not allege any facts that indicate Midwest knew the equipment was not owned by any Defendant." *Id.* at 2–3. Setting the group pleading issue aside, neither of these supposedly missing facts reflects an element of conversion in Illinois. *See Gen. Motors Corp. v. Douglass*, 565 N.E.2d 93, 96–97 (Ill. 1990) ("[A] proper complaint for conversion must allege: (1) an unauthorized and wrongful assumption of control, dominion, or ownership by defendant over plaintiff's personalty; (2) plaintiff's right in the property; (3) plaintiff's right to the immediate possession of the property, absolutely and unconditionally; and (4) a demand for possession . . . ."); *Martel Enters. v. City of Chicago*, 584 N.E.2d 157, 159 (Ill. App. Ct. 1991) ("Although conversion is considered an intentional tort because it requires an intentional exercise of dominion or control over a chattel, it does not require proof of malice, culpability, or conscious wrongdoing. It is also not necessary to show an intent to interfere with the rights of others . . . ." (citations and quotation marks omitted)); *cf. Fortech, L.L.C. v. R.W. Dunteman Co.*, 852 N.E.2d 451, 458–61 (Ill. App. Ct. 2006) (discussing conversion in the context of agency relationships involving "innocent" agents). Here, Plaintiffs allege Midwest employees loaded Plaintiffs' equipment onto company vehicles and hauled it all to Missouri. Am. Compl. ¶¶ 28–29; Resp. 1–2, 6–7, 9 (alleging that Midwest employees participated in loading the equipment onto company vehicles and also drove those vehicles away from the site); *see Help At Home Inc. v. Med. Cap., L.L.C.*, 260 F.3d 748, 752–53 (7th Cir. 2001) ("A plaintiff . . . may add [additional facts] by affidavit or brief in order to defeat

a motion to dismiss if the facts are consistent with the allegations of the complaint." (quotation marks omitted)). If this is not sufficient to state a claim for conversion, Midwest offers no reason to think so. Count I therefore survives.

With respect to Count II, damage to personal property, Midwest argues that "[i]t is unclear which Defendant Plaintiff is alleging damaged the equipment and Plaintiff does not allege any facts that would support Midwest having any knowledge of the parties' rights." Mem. Supp. Am. Mot. Dismiss 3. A more fundamental problem is that no such tort exists in Illinois. *See Loman v. Freeman*, 874 N.E.2d 542, 552 (Ill. App. Ct. 2006) ("[I]f one cuts, carves, lacerates, incises, or otherwise alters someone else's property except as authorized by that person, one commits a classic tort: either trespass to chattels or conversion, depending on the extent of the alteration."), *aff'd*, 890 N.E.2d 446 (Ill. 2008); *cf. Leith v. Frost*, 899 N.E.2d 635, 637, 640 (Ill. App. Ct. 2008) (analyzing the plaintiffs' "tortious damage to . . . personal property" claim under a negligence framework). It is not clear if Plaintiffs are intending to seek redress for the alleged property damage via their conversion claim or another vehicle in tort. Count II is therefore dismissed without prejudice, and the Court grants Plaintiffs leave *sua sponte* to amend their complaint, if necessary, to replead it.

With respect to Count IV, robbery, Midwest argues that nothing in the Amended Complaint "mention[s] anything about Midwest using force or threatening to use force" to take Plaintiffs' equipment. Mem. Supp. Am. Mot Dismiss 3. Again, the real error is more fundamental. "It is well settled that criminal statutes do not provide for private civil causes of action." *Agrawal v. Lambertson*, Civil No. 06-cv-945-GPM, 2008 WL 818503, at *2 (S.D. Ill. Mar. 24, 2008) (citing *Diamond v. Charles*, 476 U.S. 54, 64–65 (1986)); *see also Kelly v. Rockefeller*, 69 F. App'x 414, 415 (10th Cir. 2003) ("[C]riminal statutes do not provide for

private civil causes of action . . . ."). The State of Illinois alone enjoys jurisdiction to prosecute violations of the Illinois Criminal Code. *Cf. Diamond*, 476 U.S. at 65; 720 ILCS 5/1-5. Count IV is therefore dismissed with prejudice. *See Agrawal*, 2008 WL 818503, at *2 (dismissing the plaintiff's forgery claim brought under 720 ILCS 5/17-3 with prejudice); *see also Bailey v. Clarke*, No. 12-CV-1100-IEG (KSC), 2012 WL 6720628, at *2 (S.D. Cal. Dec. 21, 2012) (dismissing claims "under an array of criminal statutes" with prejudice as no amendment could cure their "fundamental flaws").

Finally, with regard to Count V, RICO, Midwest argues that Plaintiffs fail to specify Midwest's role in the RICO enterprise. Mem. Supp. Am. Mot. Dismiss 4. Midwest is correct that Plaintiffs' allegations fall short. To state a claim against a defendant under 18 U.S.C. § 1962(c), a plaintiff must allege that the defendant "engaged in the (1) conduct (2) of an enterprise (3) through a pattern of racketeering activity." *Muskegan Hotels, LLC v. Patel*, 986 F.3d 692, 698 (7th Cir. 2021). Crucially, however, "[a]llegations that a defendant had a business relationship with the putative RICO enterprise or that a defendant performed services for that enterprise do not suffice" to state a claim against that defendant. *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 399 (7th Cir. 2009); *Muskegan Hotels*, 986 F.3d at 698 ("[T]he operation-or-management requirement is not met through the mere provision of professional services to the alleged racketeering enterprise."). That is so "even with knowledge of the enterprise's illicit nature." *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 598 (7th Cir. 2001) (quoting *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 (7th Cir. 1998)). RICO "require[s] that the [defendant] have had some control over the enterprise itself." *Id.* Plaintiffs fail to allege any facts suggesting that Midwest or Sheppard, its sister defendant, exerted such control.

Plaintiffs' RICO allegations do not pass muster overall.  Plaintiffs generally reference a "pattern of racketeering activity," Am. Compl. ¶¶ 47, 49, but the Amended Complaint provides little clarity as to what that means factually in this context.  A pattern of racketing activity consists of "at least two acts of racketeering activity within a ten year period," *Franklin Cash Reg., Inc. v. Dealzz*, No. 20 C 6258, 2022 WL 972292, at *5 (N.D. Ill. Mar. 31, 2022) (quotation marks omitted), but Plaintiffs allege only that the racketeering activity here "related to the actions of the enterprise in which the Defendants all had a designated role in knowingly taking the Plaintiffs' equipment . . . which constitutes a robbery," Am. Compl. ¶ 50.  What this means is frankly hard to decipher, but it is clearly not enough for Plaintiffs' RICO claim to survive.  *See Franklin Cash Reg.*, 2022 WL 972292, at *6 ("Parsing the [c]omplaint to identify which factual allegations could possibly refer to predicate acts, or which allegations [the plaintiff] may intend to serve as an allegation of the existence of an enterprise, does not meet th[e] standard."); *cf. Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 337 (7th Cir. 2019) ("To plead a pattern of racketeering activity, a plaintiff must demonstrate a relationship between the predicate acts as well as a threat of continuing activity—a standard known as the 'continuity plus relationship' test." (quotation marks omitted)).  Given RICO's complexity, Plaintiffs must provide "more detail . . . to give the opposing party notice of what the case is all about and to show how . . . the dots should be connected." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010).  At present, Count V consists of little more than conclusory allegations, so it is dismissed.

**CONCLUSION**

Accordingly, Defendant Midwest Demolition and Scrap Inc.'s motion to dismiss, ECF No. 6, is GRANTED IN PART. Count II, Count IV, and Count V are dismissed. Plaintiff is granted leave to file an amended complaint within 14 days of service of this Order.

Entered this 1st day of June, 2023.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE